IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-00329-PAB-NRN

KATELYN ANDERSON, on behalf of herself and similarly situated employees,

     Plaintiff,

v.

VITAC CORPORATION,

     Defendant.

---

## ORDER

---

This matter is before the Court on the Joint Motion for Preliminary Approval of Class Action Settlement [Docket No. 74]. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

On January 31, 2025, plaintiff Katelyn Anderson filed her complaint on behalf of herself and all others similarly situated against defendant Vitac Corporation. Docket No. 1. Ms. Anderson was employed by defendant from October 2017 to November 2024 to create closed captions for defendant's media clients. *Id.* at 3, ¶ 15. Defendant hired employees who are paid hourly. *Id.*, ¶ 16. The complaint alleges that defendant required its employees to perform "prep time," *id.*, where they were required to clock-in and perform "preparation tasks," such as connecting to customers' facilities, conducting research, and conducting quality assurance, before the scheduled start of their shifts. *Id.* at 3, 4, ¶¶ 17, 21. The complaint alleges that Ms. Anderson and similarly situated

employees recorded their prep time, but were not paid for that time.  *Id.* at 3-4, ¶¶ 19, 24.

Ms. Anderson seeks to represent a collective pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 216(b), and a class pursuant to Fed. R. Civ. P. 23.  *See id.* at 4-7.  On behalf of the collective, Ms. Anderson asserts a claim for violation of the FLSA for unpaid wages.  *See id.* at 7-8.  On behalf of the class, Ms. Anderson asserts claims for violation of the Colorado Wage Act and for unjust enrichment.  *See id*. at 8-9.

## II.  HYBRID CLASS ACTIONS

Ms. Anderson seeks to certify a hybrid class action.  *See* Docket No. 1 at 2-3, ¶¶ 9-10.  Hybrid class actions involve both a Rule 23 class action and FLSA collective actions.  *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 123 (D. Colo. 2016).  "Hybrid actions have troubled district courts across the country because of the inherent conflict between the opt-in requirement of FLSA collective actions and the opt-out provisions of Rule 23(b)(3) class actions."  *Id*.  In a Rule 23 class action, class members are bound by class judgment unless they affirmatively opt-out.  *See id.*  On the other hand, in an FLSA collective action, collective members must affirmatively opt-in to be bound by a judgment on behalf of the collective.  *See id.* at 124.  "Employees who do not opt-in are not similarly bound by the results of the litigation, including any settlement."  *Id.*

In their Joint Motion, the parties ask the Court to approve the settlement of both the FLSA collective claim and the CWA class claim.  Docket No. 74 at 1.  "Although the opt-in requirement of FLSA collective actions conflicts with the opt-out provisions of

2

Rule 23(b)(3) class actions, courts have permitted parties to enter into hybrid settlements to resolve both FLSA and state law claims." *German v. Holtzman Enters., Inc.*, No. 19-cv-03540-PAB-STV, 2023 WL 3585212, at *2 (D. Colo. May 22, 2023). Accordingly, courts have found it appropriate in hybrid actions to bind class members – who do not opt-out pursuant to Rule 23 – to the ultimate judgment, which includes the release of FLSA claims. *See id.* at *10 ("The result of the application of *res judicata* is that individuals who do not opt out of the Rule 23 class, but do not opt in to the release of FLSA claims, are nevertheless bound by the settlement unless they show grounds for collateral attack on the judgment."); *Pliego*, 313 F.R.D. at 132 ("This court is in agreement with courts which have found that normal *res judicata* principles apply in hybrid FLSA/Rule 23 collective/class actions, thus binding non opt-out Rule 23 Class Members who do not specifically opt-in to the release of FLSA claims to the ultimate judgment, unless such a claimant shows grounds for collateral attack on the judgment.").

"Where parties seek settlement of a hybrid action, the settlement is evaluated on a combination of the factors required for preliminary approval of an FLSA action and those required for approval of a Rule 23 class settlement." *German*, 2023 WL 3585212, at *2. Accordingly, the Court will determine, pursuant to Rule 23 and the FLSA, whether conditional certification of the proposed class is appropriate and whether the settlement agreement is fair and reasonable.

## III. PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Approval of a class action settlement under Federal Rule of Civil Procedure 23 occurs in two stages. In the first stage, the court preliminarily certifies a settlement

class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the settlement's fairness.  In the second stage, after notice is given to the putative class, the court holds a fairness hearing at which it will address (1) any timely objections to the treatment of this litigation as a class action and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see*, *e.g.*, *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."  *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)).  A proposed settlement of a class action should therefore be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives.*"  See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation marks omitted).  Although the standards for preliminary approval of a class action settlement are not as stringent as they are in the second stage, *id.*, the standards used in the second stage inform the court's preliminary inquiry.  Therefore, it is appropriate to review those standards.

District courts have broad discretion when deciding whether to certify a putative class.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 967 (10th Cir. 2004).  A district

court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that

the requirements of Rule 23 are met, and frequently, a district court's "'rigorous analysis'

will entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564

U.S. at 350–51; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir.

2006) (holding that "the obligation to make [Rule 23] determinations is not lessened by

overlap between a Rule 23 requirement and a merits issue, even a merits issue that is

identical with a Rule 23 requirement").

      A district court may certify a class action if the proposed class satisfies the

prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three

types of classes identified in Rule 23(b).  The plaintiff bears the burden of proving that

Rule 23's requirements are satisfied.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188,

1194 (10th Cir. 2010) (citing *Shook*, 386 F.3d at 968).  Rule 23(a) requires that (1) the

class be so numerous that joinder is impracticable; (2) there are questions of law or fact

common to the class; (3) the claims of the representative parties are typical of those of

the class; and (4) the representative parties will fairly and adequately protect the

interests of the class.  Fed. R. Civ. P. 23(a); *In re Literary Works in Elec. Databases*

*Copyright Litig.*, 654 F.3d 242, 249 (2d. Cir. 2011).

      The parties ask the Court to certify a settlement class under Rule 23(b)(3).

Docket No. 74 at 14.  Under that provision, plaintiffs must show that "questions of law or

fact common to class members predominate over any questions affecting only individual

members" and that a class action "is superior to other available methods for fairly and

efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In determining

predominance and superiority under Rule 23(b)(3), the court considers the following

factors: (A) the class members' interests in individually controlling the prosecution or

defense of separate actions; (B) the extent and nature of any litigation concerning the

controversy already begun by or against class members; (C) the desirability or

undesirability of concentrating the litigation of the claims in the particular forum; and (D)

the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).  To

certify a settlement class, the court need not inquire whether the case, if tried, would

present difficult management problems under Rule 23(b)(3)(D).  *Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 620 (1997).  However, all other Rule 23 requirements apply and

demand heightened attention in the settlement context because the court generally

lacks an opportunity to adjust the class as the case unfolds.  *Id.*  If the proposed

settlement class satisfies the requirements of Rules 23(a) and (b), then the court must

separately evaluate whether the settlement agreement is "fair, reasonable, and

adequate" under Rule 23(e).[1]  Fed. R. Civ. P. 23(e)(2); *In re Am. Int'l Grp., Inc. Sec.*

*Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).

If plaintiffs meet the requirements for preliminary approval, the court will direct

notice to all class members who would be bound by the proposed settlement agreement

and hold a fairness hearing to determine if the proposal

> is fair, reasonable, and adequate after considering whether: (A) the class
> representatives and class counsel have adequately represented the class; (B)
> the proposal was negotiated at arm's length; (C) the relief provided for the class
> is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class,
> including the method of processing class-member claims; (iii) the terms of any
> proposed award of attorney's fees, including timing of payment; and (iv) any

---

[1] The Supreme Court in *Amchem* cautioned that the fairness inquiry under Rule 23(e) does not supplant the Rule 23(a) and (b) requirements, but instead "function[s] as an additional requirement."  521 U.S. at 621.

agreement required to be identified under Rule 23(e)(3); and (D) the proposal
treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

As noted above, although the standards for preliminary approval are not as
stringent as those for final approval, the final approval standards inform the court's
preliminary inquiry.  The court's review for final approval is to "focus[] on whether '(1)
the settlement was fairly and honestly negotiated, (2) serious legal and factual
questions placed the litigation's outcome in doubt, (3) the immediate recovery was more
valuable than the mere possibility of a more favorable outcome after further litigation,
and (4) [the parties] believed the settlement was fair and reasonable.'"  *Elna Sefcovic,
LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished)
(quoting *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).

## IV.  PRELIMINARY APPROVAL OF FLSA COLLECTIVE SETTLEMENT

To preliminarily approve an FLSA collective settlement, the court must (1)
conditionally certify an FLSA collective; and (2) preliminarily approve the FLSA
settlement.  *See Stanley v. Panorama Orthopedics & Spine Ctr., P.C.,* No. 22-cv-01176-
RM-SBP, 2024 WL 1743497, at *11 (D. Colo. Apr. 23, 2024).  Title 29 U.S.C. § 216(b)
of the FLSA provides in pertinent part:

> Any employer who violates the provisions of . . . section 207 of this title shall be
> liable to the employee or employees affected in the amount of . . . their unpaid
> overtime compensation, . . . and in an additional equal amount as liquidated
> damages. . . .  An action to recover the liability prescribed in [section 207] may be
> maintained against any employer . . . in any Federal . . . court of competent
> jurisdiction by any one or more employees *for and in behalf of himself or
> themselves and other employees similarly situated*.

29 U.S.C. § 216(b) (emphasis added).  There is a two-step approach for determining
whether plaintiffs are "similarly situated" for purposes of FLSA collective action

certification. *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).[1]  The

court's initial certification comes at the notice stage, where the court determines

whether the plaintiff is similarly situated for purposes of sending notice to putative

collective members.  *Id.* at 1102.  Plaintiff is required to provide "nothing more than

substantial allegations that the putative class members were together the victims of a

single decision, policy or plan."  *Id.*; *see also Stransky v. HealthONE of Denver, Inc.*,

No. 11-cv-02888-WJM-MJW, 2012 WL 6548108, at *4 (D. Colo. Dec. 14, 2012).  This is

a "lenient" standard, *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092

(D. Colo. 2005), "which typically results in conditional certification of a representative

class."  *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007).

The second stage, which comes at the conclusion of discovery, applies a stricter

standard of "similarly situated," including application of at least four factors, to determine

whether the case can proceed as a collective action.  *Thiessen*, 267 F.3d at 1102-03.

      In an FLSA action, the parties must present any proposed settlement to the

district court for review and a determination of whether the settlement agreement is fair

and reasonable.  *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353

(11th Cir.1982); *Baker v. Vail Resorts Mgmt. Co.*, No. 13-cv-01649-PAB-CBS, 2014 WL

700096, at *1 (D. Colo. Feb. 24, 2014).  Requiring court approval of FLSA settlements

effectuates the purpose of the statute, which is to "protect certain groups of the

---

[1] *Thiessen* involved a collective action under the Age Discrimination in
Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.  Because the ADEA adopts the
collective action mechanism set forth in FLSA § 216(b), courts apply *Thiessen* to FLSA
collective actions.  *See Kaiser v. At The Beach, Inc.*, 2010 WL 5114729, at *4 n.9 (N.D.
Okla. Dec. 9, 2010); *see also Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679
(D. Kan. 2004).

population from substandard wages and excessive hours . . . due to the unequal

bargaining power as between employer and employee." *Brooklyn Sav. Bank v. O'Neil,*

324 U.S. 697, 706 (1945).  To approve the settlement agreement, the court must find

that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and

equitable to all parties concerned, and (3) any award of attorney's fees in the proposed

settlement be reasonable.  *Baker*, 2014 WL 700096, at *1.

## V.  ANALYSIS OF PROPOSED SETTLEMENT AGREEMENT

### A.  The Settlement Agreement

The parties' motion for preliminary approval of the class settlement seeks

certification of a class of "[a]ll current and former closed captioners in Colorado who

worked for Defendant from January 31, 2022 through the date of final settlement

approval."  Docket No. 74 at 3.  The settlement agreement states that defendant will pay

a Maximum Settlement Amount of $500,000.  Docket No. 74-1 at 3.  The Maximum

Settlement Amount includes a $5,000 service award to Ms. Anderson, $200,000 for

class counsel's attorney's fees, settlement payments to class members, and settlement

payments to Out of State Captioners, who are "out-of-state captioners who signed

consent forms to participate in this litigation."  *Id.*  at 3, 10.  The only cost not included in

the Maximum Settlement Fund is the cost of the Settlement Administrator.  *Id.* at 3.

Defendant will pay the cost of the Settlement Administrator.  *Id.* at 11.  Within 21 days

after the Date of Finality,[2] defendant shall transfer the Maximum Settlement Amount to

---

[2] The Settlement Agreement defines the Date of Finality as:
  the later of the following: (1) the date the Final Order is signed if no
  objections are made to the Settlement or if objections are made and
  withdrawn; (2) five (5) days after the deadline to appeal the Final Order
  has expired without a timely appeal or request for review being filed if

the Settlement Administrator.  *Id.* at 10.  After attorney's fees and the service award are paid from the Maximum Settlement Fund, class members and Out of State Captioners will be paid.  *Id.* at 11.  Ms. Anderson, class members, and Out of State Captioners shall release their claims[3] against defendant, effective on the date that defendant transfers the Maximum Settlement Amount to the Settlement Administrator.  *Id.* at 14-15.

## B.  Numerosity

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant a class action because the alternative of joinder is impracticable.  Fed. R. Civ. P. 23(a)(1).  Some courts have held that numerosity may be presumed after a certain number of class members are met; however, the Tenth Circuit has never adopted a presumption of numerosity.  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (upholding district court ruling that a group of eighty-four class members was insufficient to warrant class certification).

---

objections are filed and overruled; (3) ten (10) days after any appeal is withdrawn or after an appellate decision affirming the Final Order without material modification becomes final if objections are filed and overruled and an appeal is taken of the Final Order; or (4) the date that the Action is dismissed with prejudice.

Docket No. 74-1 at 2.

[3] Claims shall include:

The claims released shall include, without limitation, known and unknown claims relating to any alleged: underpayment of wages; failure to pay minimum wages; failure to pay or correctly calculate regular, overtime, paid sick leave, or meal or rest break premium pay; failure to provide meal or rest periods; failure to maintain accurate payroll records; failure to timely pay wages when due; failure to pay pre-shift or post-shift activities; failure to pay reporting time; failure to reimburse business expenses; and any statutory and/or civil penalty claims including but not limited to claims for inaccurate wage statements, untimely or late pay, and underpayment of wages due at termination.

*Id.* at 14.

Here, the parties state that the settlement class contains 88 putative members. Docket No. 74 at 11. Given *Trevizo*, the sheer number of class members does not create a presumption of numerosity; however, given that the Tenth Circuit has found fewer potential claimants can satisfy numerosity, *see, e.g.*, *Rex v. Owens ex rel St. of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class."), the Court agrees that the joinder of 88 people would be impracticable and that the numerosity requirement is met.

### C. Commonality

Rule 23(a) requires a district court to ensure that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Factual differences in the claims of the individual class members should not result in the denial of class certification where common questions of law exist. *Devaughn*, 594 F.3d at 1195. Commonality requires that plaintiffs demonstrate that the class members have "suffered the same injury" such that the claims of the class are based on a common contention and that the determination of the truth or falsity of this contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. In other words, plaintiffs must have a common question of fact or law that will connect many individual claims to the relief sought by the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

The parties contend that members of the proposed class have questions of law and fact in common that include whether defendant paid them on a piece rate basis, whether defendant failed to compensate them for prep time, whether proposed class

members are owed minimum wage or overtime compensation, and whether owed prep

time (if any) should be paid despite the piece rate agreement.  Docket No. 74 at 12.

Because a "finding of commonality requires only a single question of law or fact

common to the entire class," *see Devaughn*, 594 F.3d at 1195, the Court finds that the

commonality requirement is satisfied.  *See Stanley,* 2024 WL 1743497, at *4 (agreeing

with the parties that "commonality is met here because the proposed class features two

basic questions of law and fact that are common to every member of the class: Whether

each worked hours off-the-clock and whether non-payment of wages for those hours

violated state and federal wage law") (internal quotation, alteration, and citation

omitted); *Shahlai v. Comcast Cable Commc'ns Mgmt., LLC,* No. 16-cv-2556-WJM-NRN,

2018 WL 3870129, at *4 (D. Colo. Aug. 15, 2018) (holding that the commonality

requirement was satisfied where the parties asserted that "the Settlement Class

Members are joined by the common questions of law and fact that arise from

[defendant's] alleged failure to pay minimum wages") (citation omitted).

Accordingly, the Court finds that the commonality requirement is satisfied.

## D.  Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties

are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The

typicality requirement ensures that the absent class members are adequately

represented by the lead plaintiffs such that the interests of the class will be fairly and

adequately protected in their absence.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

157 n.13 (1982).  Typicality "is satisfied when each class member's claim arises from

the same course of events, and each class member makes similar legal arguments to

prove the defendant's liability."  *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).
The interests and claims of the lead plaintiff and the class members need not be
identical to satisfy typicality and, provided the claims of the lead plaintiff and class
members are based on the same legal or remedial theory, differing fact situations of the
class members do not defeat typicality.  *Devaughn*, 594 F.3d at 1198–99.
Nevertheless, "it is well-established that a proposed class representative is not 'typical'
under Rule 23(a)(3) if the representative is subject to a unique defense that is likely to
become a major focus of the litigation."  *Marcus v. BMW of N. Am.*, *LLC*, 687 F.3d 583,
599 (3d Cir. 2012) (citation and quotation omitted).

The parties contend that Ms. Anderson's claims are typical of the class claims
because Ms. Anderson and class members were employed as voice captioners for
defendant, paid on a piece rate basis, compensated through a common payroll system,
and subject to defendant's policies for voice captioners, including policies concerning
prep time.  *See* Docket No. 74 at 12-13.  The Court agrees that Ms. Anderson's claims
are typical claims of the proposed class.  Accordingly, the Court finds that the typicality
requirement is satisfied.  *See Stanley*, 2024 WL 1743497, at *4 (holding that the
typicality requirement was satisfied because "[t]he Named Plaintiffs, like all members of
the putative class, allege that they were not paid for the off-the-clock hours they worked
and that this non-payment violated the same state and federal laws as to each of
them").

## E.  Adequacy of the Representation

Rule 23(a)(4) requires that the class representatives "fairly and adequately
protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As the Supreme Court has

noted, the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem*, 521 U.S. at 626 n.20 (internal quotations omitted). As such, the "inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id*. at 625. To be an adequate class representative, the "representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id*. at 625-26.

The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985.

The Court finds that the interests of the class are fairly and adequately protected by Ms. Anderson and her counsel. With regard to the first adequacy factor, Ms. Anderson's interests are aligned with those of the proposed settlement class because she seeks relief for injuries arising out of the same conduct by defendant that resulted in unpaid wages. Further, there is nothing in the record to show any conflict of interest

between Ms. Anderson or counsel and the rest of the class; any class members who disagree will be able to challenge this issue at the fairness hearing if they believe otherwise.

With regard to the second adequacy factor, the proposed class counsel, Sara A. Green of Hardin Thompson PC, "has diligently litigated this case since its inception and has significant experience litigating FLSA and CWCA claims, including the resolution of class actions and complex cases through settlement." *See* Docket No. 74 at 13.  There are no questions regarding the competency of the proposed class counsel or her ability to prosecute this action, and, to the extent any such questions do arise, they will be considered at the fairness hearing.  Accordingly, at this preliminary stage, because Ms. Anderson and proposed class counsel do not have a conflict of interest with the rest of the class and have shown that they can vigorously litigate on behalf of the class, the Court finds that the adequacy requirement is satisfied.  *See Rutter*, 314 F.3d at 1188.

### F.  Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 615.  Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the

litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to the class predominate over those affecting only individual class members.  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).  However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement. *Amchem*, 521 U.S. at 624.  Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be certified only when it would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) (quotation omitted).  Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation based on "questions that preexist any settlement."  *Amchem*, 521 U.S. at 623.

The Court agrees that common questions predominate over questions only affecting individual members.  *See* Docket No. 74 at 14.  Evidence of unpaid wages is a common question that goes to the alleged injury.  *See Stanley*, 2024 WL 1743497, at *6 (finding that common questions predominate in a case regarding unpaid wages because the court found that there was a dominant injury, even if the "*amount* of damages will vary among the class members").  Although the damages may vary for individuals in the class, the question of what wages should have been paid will be

common to the class and is enough at this stage to show a common question on the
measure of damages.

Second, the Court finds that a class action settlement is a superior method for
resolving this dispute fairly and effectively.  Settlement avoids duplicative litigation,
saving both class members and defendant significant time and legal costs to adjudicate
common legal and factual issues.  Additionally, the parties state that "absent Class
Members to date have shown no interest in controlling the litigation of separate actions
because no other litigation regarding this controversy has been commenced."  Docket
No. 74 at 14.  Thus, given that the class members' claims arise from the same series of
events, the Court finds that conducting the class action settlement in this forum would
achieve economies of time, effort, and expense and promote uniformity of decision to
similarly situated persons.   *See* Fed. R. Civ. P. 23(b)(3); *Cordes*, 502 F.3d at 104.
Because class members will receive the same type of relief and have claims that
present common questions of fact and law, the Court finds that class certification is
appropriate because the class questions predominate over individual questions and the
settlement class is a superior method of resolving this litigation.  *See Amchem*, 521 U.S.
at 623.

### G.  Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a
"finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making
this determination, "trial judges bear the important responsibility of protecting absent
class members" and must be "assur[ed] that the settlement represents adequate
compensation for the release of the class claims."  *In re Pet Food Prods. Liab. Litig.*,

629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the

Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements

affecting their rights when the representatives become fainthearted before the action is

adjudicated or are able to secure satisfaction of their individual claims by a compromise"

(citations omitted)).

To determine whether a proposed settlement is fair, reasonable, and adequate,

courts consider the following factors: (1) whether the proposed settlement was fairly and

honestly negotiated; (2) whether serious questions of law and fact exist, placing the

ultimate outcome of the litigation in doubt; (3) whether the value of an immediate

recovery outweighs the mere possibility of future relief after protracted and expensive

litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter*, 314 F.3d at 1188.  If the settling parties can establish these factors, courts

usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin*

*Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial

presumption of fairness" to a proposed settlement where: (1) it is the result of arm's

length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the

settlement are experienced in similar litigation; and (4) only a small fraction of the class

objected).

Based on the information available to the Court, the Court notes the following,

which weigh in favor of preliminary approval: (1) the proposed settlement agreement is

the product of "extensive arms-length negotiations and a settlement conference with

Magistrate Judge N. Reid Neureiter," *see* Docket No. 74 at 2-3; (2) the Settlement

Agreement was negotiated by "experienced counsel" and "Class Counsel has

negotiated settlements of FLSA and CWCA claims on both an individual and a class-wide basis and is experienced in addressing the issues that arise in complex litigation and settlements," *see id.* at 9-10; and (3) there is no evidence that the settlement agreement was the result of a collusive agreement between the parties. *See id.* at 10. The Court therefore finds that the negotiations were conducted fairly and honestly. Furthermore, the parties represent that "Defendant denies any fault, liability, or wrongdoing of any kind and disputes that the evidence developed in any way supports the claims asserted in the litigation" and "that the named Plaintiff or any Settlement Class Members were harmed or suffered any loss as a result of any of the conduct alleged in the litigation." *See id.* at 3.  As a result, the Court finds that the serious questions factor weighs in favor of the proposed settlement agreement.[4]

The settlement agreement provides that "Class Counsel shall move for an award of attorneys' fees of no more than Two Hundred Thousand Dollars and Zero Cents ($200,000) from the Maximum Settlement Amount, and Defendant shall not oppose the request for attorneys' fees for that amount."  Docket No. 74-1 at 10.  Local Rule 54.3(b) requires that a motion for attorney's fees shall include the following for each person for whom fees are claimed: (1) a summary of the relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.  D.C.COLO.LCivR 54.3(b).  To determine the reasonableness of a fee request, a court must begin by calculating the

---

[4] At the fairness hearing, the Court will be interested in what percentage of each class member's estimated unpaid prep time and off-the-clock work will be compensated through the Settlement Amount and what percentage would be compensated if attorney's fees awarded were 30% of the Settlement Amount rather than 40%.

"lodestar amount." *Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir. 1998).

The lodestar amount is the "number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart,* 461 U.S. 424, 433

(1983). A "reasonable rate" is defined as the prevailing market rate in the relevant

community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop.*

*Mgmt., Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002). A party seeking an award of

attorney's fees must establish the reasonableness of each dollar and each hour for

which the party seeks an award. *Jane L. v. Bangerter,* 61 F.3d 1505, 1510 (10th Cir.

1995).

Because class counsel has not yet moved for attorney's fees pursuant to Local

Rule 54.3(b), the Court will not determine the precise amount of attorney's fees that

class counsel is entitled to. Rather, the Court will determine whether the maximum

amount of attorney's fees provided for in the settlement agreement is fair and

reasonable. The proposed, maximum attorney's fee award of $200,000 is 40% of the

settlement fund. *See* Docket No. 74-1 at 10. This amount is within the customary

range for contingent fee awards in common fund settlement cases. *See Johnston v.*

*Camino Nat. Res., LLC*, No. 19-cv-02742-CMA-SKC, 2021 WL 2550165, at *2 (D. Colo.

June 22, 2021) (finding that an attorney's fee award that is 40% of the settlement fund is

"within the normal range for a contingent fee award"); *Whittington v. Taco Bell of Am.,*

*Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013)

("Together the fees and costs amount to approximately 39% of the fund as a whole.

This is within the normal range for a contingent fee award."); *Vaszlavik v. Storage Corp.*,

No. 95-cv-02525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) ("A 30% common

fund fee award is in the middle of the ordinary 20%-50% range and is presumptively reasonable.").  Provided that class counsel's motion for attorney's fees sufficiently supports the amount requested, and depending on the information discussed in footnote four above, the Court finds that the attorney's fee provision of the settlement agreement is reasonable.

Regarding the $5,000 service award for Ms. Anderson, the Court finds that this amount is reasonable.  "When determining whether a service award is reasonable, courts consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class benefited from those actions, the time and effort required to pursue the litigation, and any reasonable fears of workplace retaliation."  *Stanley,* 2024 WL 1743497, at *13.  The parties state that "Ms. Anderson met with Class Counsel Sara Green on several occasions to discuss her employment with Defendant, Defendant's pay practices, and her time records in order to assist with the Complaint" and "assisted counsel in preparing for settlement negotiations."  Docket No. 74 at 7.  These are "consequential tasks" and the service award "appear[s] to be in line with . . . awards . . . that have been approved in class settlements in this District."  *See Stanley*, 2024 WL 1743497, at *14.

Next, the Court must determine whether the value of immediate recovery outweighs the mere possibility of future relief.  This factor weighs in favor of the proposed settlement.  Given the prospect of shortening what could be prolonged litigation and providing partial guaranteed relief, the Court finds that immediate recovery outweighs the possibility of future relief.  Accordingly, the Court finds this factor weighs in favor of granting preliminary approval.  With regard to the fourth factor, the parties'

counsel has extensive experience in wage and hour class action litigation and represents that the settlement agreement is fair and reasonable.  *See* Docket No. 74 at 9-10.

Certifying the class will allow the Court to determine whether there are members of the class who challenge the fairness of the parties' proposed settlement agreement. Should any class member find the terms of the settlement agreement unfair, he or she may choose not to join the settlement and to litigate independently or to remain in the case and file objections to the settlement agreement detailing why it is unfair under the Rule 23 factors.  *Cf. Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536-38 (11th Cir. 1996) (district court did not abuse discretion in denying motion to intervene, based on the court's conclusion that proposed intervenors could protect their interest either by opting out of the class and litigating separately, or by remaining in the case and, if they thought the proposed settlement was unfair, objecting to it); *In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *12 (explaining that party opposing settlement agreement could opt-out or file objections).  The Court finds that the presumption of fairness, *see In re Warfarin Sodium*, 391 F.3d at 535, is sufficient to preliminarily approve the terms of the proposed settlement agreement.

## H. FLSA Factors

For the same reasons that the Court will preliminarily certify a Rule 23 class, the Court finds that preliminary certification is appropriate under the FLSA.  *See Stanley*, 2024 WL 1743497, at *10 ("And in light of the overlap between the requirements for preliminarily certifying a Rule 23 class and an FLSA collective action, '[f]or essentially the same reasons explained above, as to Rule 23, and given the parties' stipulation and

joint motion, the Court also finds that preliminary certification of the proposed FLSA

class is warranted under the comparatively lenient standard for preliminary certification

and notice of an FLSA collective action.'") (quoting *Shahlai*, 2018 WL 3870129, at *6).

The Court finds that the complaint provides substantial allegations that the putative

collective members are similarly situated.  *See Thiessen*, 267 F.3d at 1102-03.

Turning to whether there is a bona fide dispute, the parties state that this case

alleges defendant violated the FLSA and Colorado Wage Act by "failing to pay

Captioners for mandatory pre-shift 'prep time' and related off-the-clock work performed

by Plaintiff and all similarly situated employees."  Docket No. 74 at 2.  The parties

engaged in "extensive investigation and discovery" with defendant producing "over

13,800 pages of documents consisting of employees' pay records and Defendant's pay

policies and practices."  *Id.*  Defendant denies any fault, liability, or wrongdoing and

denies that class members were harmed by defendant's alleged practices.  *See id.* at 3.

Accordingly, the Court finds that a bona fide dispute exists.

To be fair and reasonable, an FLSA settlement must provide adequate

compensation to the employees and must not frustrate the FLSA's policy rationales.

*See Ostrander v. Customer Eng'g Servs., LLC,* No. 15-cv-01476-PAB-MEH, 2019 WL

764570, at *1 (D. Colo. Feb. 21, 2019).  Courts considering both individual and

collective settlements under the FLSA turn to the factors for evaluating the fairness of a

class action settlement.  *Id.*  Courts then determine "whether the settlement undermines

the purposes of the FLSA."  *See Stanley*, 2024 WL 1743497, at *11 (citation omitted).

For the reasons described *supra* § V.G, the Court finds that the proposed

settlement agreement is fair and reasonable.  As for whether the settlement agreement

undermines the purpose of the FLSA, the FLSA's purpose is to protect employees' rights from employers who generally wield superior bargaining power.  *See Baker*, 2014 WL 700096, at *2.  To determine whether a settlement agreement complies with the FLSA, courts look at the following factors: (1) the presence of other similarly situated employees; (2) a likelihood that plaintiff's circumstances will recur; and (3) whether defendant has a history of non-compliance with the FLSA.  *Id.*

The Court agrees that the employees in this case are similarly situated.  *See* Docket No. 74 at 3-5.  There is no evidence that defendant's alleged failure to comply with the FLSA represents a continuing violation and the Court discerns "no reason to anticipate anything other than Defendants' compliance with the FLSA going forward."  *See Stanley*, 2024 WL 1743497, at *12.  As discussed *supra* § V.G., the Court finds that the attorney's fee award contemplated by the settlement agreement, provided that plaintiff's counsel sufficiently supports her fee award request in her motion for attorney's fees and depending on the information discussed in footnote four, is reasonable. Plaintiff's counsel reviewed over 13,800 pages of discovery and engaged in extensive arms-length negotiations and a settlement conference.  *See* Docket No. 74 at 2. Furthermore, this case involves "hybrid classes and so is more complex than either a standalone FLSA collective action or Rule 23 class action would have been."  *See Stanley*, 2024 WL 1743497, at *13.

Accordingly, the Court finds that the settlement agreement is fair and reasonable under the FLSA.

## VI.  NOTICE TO THE SETTLEMENT CLASS

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005). However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action. *Id.* Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given] under the circumstances including individual notice to all members who can be identified through reasonable effort." *In re Integra Realty Resources, Inc.*, 262 F.3d at 1110 (citation omitted). Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are "coextensive and substantially similar." *DeJulius*, 429 F.3d at 944.

Plaintiff, in conjunction with the Settlement Administrator, proposes a plan to provide members of the settlement class with direct notice of the settlement in this case. *See* Docket No. 74-1 at 6-7. The Settlement Administrator – within fifteen days of receiving a list of class members' and Out of State Captioners' last known home or mailing address, Social Security number or, as applicable, other

taxpayer identification number, and the number of Qualifying Workweeks worked during the period (the "Class List"), *see id*. at 2 – will send the Notice by first-class mail to the applicable mailing address. *See id*. at 6. The Settlement Administrator will check the Class List against the National Change of Address Database before mailing. *See id.* If Notice is returned as undeliverable, the Settlement Administrator shall perform a skip trace to identify another address. *See id.* The parties have identified 88 class members from defendant's records. *See* Docket No. 74 at 11.

The Court is satisfied that the procedures detailed in the Settlement Agreement are reasonably calculated to apprise the absent class members of the action. *See In re Integra*, 262 F.3d at 1111. The proposed notice plan will be approved. *See Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 668 (D. Colo. 2015) (approving the parties' plan to directly mail notice using a third-party claims administrator where there was "no indication that any of the class members cannot be identified through reasonable efforts" and defendant's records already identified class members).

The notice must "clearly and concisely state in plain, easily understood language:"

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The Notice indicates that class members can request exclusion by mailing, sending a fax, or emailing the Opt-Out Form to:

Optime Administration, LLC
PO Box 3206
Brockton, MA 02304
Fax: (781) 287-0381

Docket No. 74-2 at 3.  Although the Notice indicates that putative class members can

opt-out via email, this contact information does not include an email address.  The

parties shall provide an email address for class members seeking exclusion.

Regarding the binding effect of a class judgment, the Notice states:

Upon approval of the Settlement by the Court, and that approval becoming final,
you will receive a settlement payment and will be deemed to have released
VITAC Corp. from all claims of every kind related to payment for any alleged
unpaid wages related to pre-shift "prep time" and related off-the-clock work.
Specifically, you will release and fully discharge VITAC Corp. and their present
and former officers, directors, shareholders, agents employees, representatives,
attorneys, parent companies, subsidiaries, divisions, affiliates, related
companies, successors and assigns (the "Releasees") from any and all wage
and hour claims, debts, complaints, damages, penalties, costs, demands, suits,
actions, and causes of action *under Colorado law* that were brought or could
have been brought in this Action based on the facts alleged in the operative
complaint.  The facts alleged involved the failure to pay all time worked for "prep
time."  If you participate in this settlement, you agree not to make claims against
the Releasees for those things.

*Id*. (emphasis added).  The Notice appears to represent to class members that they are

only releasing their claims under Colorado law.  However, the Settlement Agreement

indicates that class members will release all claims:

Effective the date that the Maximum Settlement Amount is deposited into the
QSF, Class Representatives and all Participating Class Members release the
Released Parties from any and all federal, state, and local wage-and-hour
claims, rights, demands, liabilities, and/or causes of action of every nature and
description, whether known or unknown, including, without limitation, statutory,
constitutional, contractual, and/or common law claims for wages, gratuities,
reimbursements, damages, unpaid costs, penalties, liquidated damages, punitive
damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief,
which were or could have been asserted in the Action based upon the alleged
claims under any federal, state, or local statutes, Wage Orders, codes, or
ordinances, to the extent permitted by applicable law, for the duration of the
Class Period. The claims released shall include, without limitation, known and

unknown claims relating to any alleged: underpayment of wages; failure to pay minimum wages; failure to pay or correctly calculate regular, overtime, paid sick leave, or meal or rest break premium pay; failure to provide meal or rest periods; failure to maintain accurate payroll records; failure to timely pay wages when due; failure to pay pre-shift or post-shift activities; failure to pay reporting time; failure to reimburse business expenses; and any statutory and/or civil penalty claims including but not limited to claims for inaccurate wage statements, untimely or late pay, and underpayment of wages due at termination ("Released Claims").

Docket No. 74-1 at 14; *see also* Docket No. 74 at 5. Accordingly, the parties shall revise the Notice to indicate that class members shall release their claims under federal, state, and local laws if they choose to not opt-out. Furthermore, the Court will require the parties to revise the Notice to explicitly state that class members will release their FLSA claims by failing to opt-out. *See German*, 2023 WL 3585212, at *12 (approving notice in a hybrid action where the "proposed notice conspicuously informs potential class members that failing to opt out of the Rule 23 class will result in the extinguishment of the potential class member's FLSA claims").

Subject to the revisions discussed, the Court will approve the Notice.

## VII. CLASS COUNSEL

When certifying a class, a court "must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In appointing class counsel, the Court must consider:

(A)(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class; [and] (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1). The settlement agreement lists Sara A. Green of Hardin Thompson, P.C. as class counsel, and the parties request that Ms. Green be appointed as class counsel. Docket No. 74-1 at 1-2; Docket No. 71 at 1. The Court finds that Ms.

Green has sufficient experience in wage collective and class actions, and her
knowledge of the applicable law, as exhibited in the case up to this point, weighs in
favor of her appointment.  Therefore, the Court finds that it is appropriate to appoint Ms.
Green as class counsel.

## VIII.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Joint Motion for Preliminary Approval of Class Action
Settlement [Docket No. 74] is **GRANTED**.  It is further

**ORDERED** that the class, defined as follows, shall be preliminarily certified
pursuant to Fed. R. Civ. P. 23:

All current and former closed captioners in Colorado who worked for Defendant
from January 31, 2022 through the date of final settlement approval.

It is further

**ORDERED** that Katelyn Anderson is appointed as Class Representative.  It is
further

**ORDERED** that Sara A. Green is appointed as Class Counsel.  It is further

**ORDERED** that the proposed Notice and notice schedule, Docket Nos. 74-1, 74-
2, are approved subject to the parties making the revisions discussed herein.  It is
further

**ORDERED** that the parties shall contact the Court to schedule a final fairness
hearing within seven days of the date of this order.  It is further

**ORDERED** that Plaintiffs' Motion for Conditional Certification of Fair Labor
Standards Act, 29 U.S.C. § 216(b) Collective Action and For Class Certification Under

Fed. R. Civ. P. 23 (Colorado Wage Act) [Docket No. 49] is **DENIED without prejudice**
as moot.[5]  It is further

ORDERED that Plaintiffs' Motion for Conditional Certification of Fair Labor
Standards Act, 29 U.S.C. § 216(b) Collective Action and For Class Certification Under
Fed. R. Civ. P. 23 (Colorado Wage Act) [Docket No. 48] is **DENIED** as moot.[6]  It is
further

ORDERED that Defendant's Opposed Motion for Leave to File Response to
Plaintiff's Motion for Conditional Certification of Fair Labor Standards Act, 29 U.S.C.
§ 216(b) Collective Action and for Class Certification Under Fed. R. Civ. P. 23 (Colorado
Wage Act) Out of Time [Docket No. 58] is **DENIED without prejudice** as moot.

DATED January 22, 2026.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[5] Because the parties have reached a settlement and now move jointly for
conditional certification, the Court finds that the parties' competing motions concerning
conditional certification, filed prior to the settlement conference, are moot.

[6] The motion filed by plaintiff at Docket No. 48 is identical to the motion filed at
Docket No. 49, except that Docket No. 49 attaches an additional exhibit.  *See* Docket
No. 49-3 at 1.  Therefore, the Court will deny Docket No. 48 as moot in light of the
amended motion.